## PALMER v. GUERRA.

### APPLICATION for a Writ of Mandamus.

No. 5.—Decided December 18, 1905.

MANDAMUS—APPLICATION SHOULD BE PRESENTED TO DISTRICT COURT.—Applications for the writ of *mandamus* should be presented in the first instance to a district court, unless the writ is sought to be obtained against the Executive Council or other high official body, or against an inferior court, in any of which cases, as well as in a case where there is any special reason for the urgent dispatch of the same, the application may be made in the first instance to the Supreme Court. In this way the matters for decision may be more easily determined, and the parties are assured of the right of an appeal.

ID.—In the future the Supreme Court will not consider an application for *mandamus* presented to it in the first instance, unless it appear from the application itself that there is some good reason therefor.

ID.—ORDINARY AND EFFECTUAL REMEDY.—The procedure provided for by the Mandamus Act cannot be resorted to except in cases where there is no other adequate and effectual remedy.

ID.—The writ of *mandamus* will not lie for the purpose of compelling delivery of a particular notarial archive to a keeper of the district archives who believes himself to have a right to the custody of the same, because in such a case he should resort to an ordinary action at law which is entirely adequate and effectual.

PUBLIC OFFICIALS—KEEPERS OF THE GENERAL ARCHIVES OF THE DISTRICT.—The keepers of the general archives of the district are public officials, and therefore have a right to be represented by the Attorney General before the courts of justice.

The facts are stated in the opinion.

Mr. Rossy, *fiscal*, for the applicant.

Mr. Miguel Guerra for the respondent.

MR. JUSTICE WOLF delivered the opinion of the court.

Santiago R. Palmer, who is the general archive-keeper for

the notarial district of San Juan, made an application to this court for the issuance of a writ of *mandamus* against Gabriel Guerra, and a rule to show cause against the latter was accordingly issued.

Why the petitioner came into this court in the first instance is not clear. We think in an ordinary case, where the writ is not directed against the Executive Council, or some other high body, or against a lower court, and where there is no particular reason of haste or expediency, application should be made to the district court. In this manner questions of fact can be examined into with more facility, and the parties are insured a right of appeal.

The law of *mandamus* should only be resorted to where there is no other plain and adequate remedy, and similarly, application ought only to be made to us where there is no other adequate forum. In the future we shall exercise our discretion to send the parties to the proper court, unless some good reason to the contrary appears on the face of the petition. There was no such reason in the case at bar, but the court having entertained jurisdiction, will proceed to consider the matter.

The application is first contested on the part of the defendant on the ground that the *fiscal* through whom the application was made had no authority to represent the petitioner. The solution of the question depends on whether or not Santiago R. Palmer is a public officer, and whether the Attorney General, by virtue of section 64 of the Political Code, would have a right to represent him. Is Palmer such an officer within the purview of that section? We think a simple reading of the act of March, 1905, makes it plain that the officer, namely, general archive-keeper, mentioned therein, and to be appointed by the Attorney General, is a public officer, an officer of the Insular Government. Even supposing he were not such officer, the character of his duties are such, and the public have such an interest in the proper exercise thereof, that the Attorney General, having under section 21 of the

Organic Act all the authority of the Attorney General of a Territory, would, in his discretion, have the right to represent him; especially where it is designed to carry into effect a law for the ultimate centralization of notarial records within each of the judicial districts.

The prinicpal question, namely, whether Guerra had or had not a right to withhold the protocols, we do not think it is necessary for us to decide at this time; indeed, it is doubtful whether we could do so on the state of the record.

Both parties in their briefs make allusions to matters and records which were not properly drawn to the attention of the court at the time of the hearing; namely, the decree under which Guerra claims his notarial rights.

The *fiscal* urges that the rights of Mauricio Guerra under such decree only passed to his son, Gabriel Guerra, for the lifetime of the former, and that Gabriel Guerra is not the legal successor of Don Mauricio Guerra, but merely a personal substitute (*sustituto personal*).

Now, if Gabriel Guerra is the legal successor, he would seem to have the right, under section 1 of the act of March, 1905, to continue to keep the archives of his lawful predecessor. There is nothing in the act, in that case, which imposes any duty on him to turn over any archives or protocols to anybody. On the other hand, if he is not the legal successor of Mauricio Guerra, the question might arise: What is the duty that the law imposes on him with respect to the general archive-keeper?

Section 2 of the law of *mandamus* specifies that the writ may issue to any inferior tribunal, corporation, board, or person, to compel the performance of any act which the law enjoins as a duty resulting from the office, trust, or station. And section 3 provides:

"This writ may not be issued in any case where there is a plain and adequate remedy in the ordinary course of the law. It may be issued on the information of the party beneficially interested."

Clearly, if Guerra has no office, trust, or station, the law imposes no duty upon him, and this application must fall by weight of the petitioner's own contentions. It may or may not be that Santiago R. Palmer is entitled to the custody of these records, but we do not see our way clear by means of a writ of *mandamus* to decide such a question, involving, as it does, the examination of records that have not been presented to us. While an ordinary suit may lie, *mandamus* does not.

An authority in point is the case of *The People* v. *Olds*, 3 Cal., p. 167; and on page 171 the court says:

"In *The People* v. *Stephens*, 5 Hill, 626, a case similar in many respects to the present, being a proceeding where the relator claimed to be the clerk of the city of Brooklyn and sought by this writ to be put in possession of the books and papers belonging to the office, while the defendant was actually in the possession of the office under color of lawful right to hold it, Bronson, justice, in delivering the opinion of the court, remarks that 'where the party has another specific remedy, a *mandamus* will not be granted. This (he says) has been decided a hundred times, and the rule is so well settled that it would be a waste of time and paper to cite the books. Many of the cases are collected in Angel and Ames on Corp., 577-8, 2d ed.;' and Judge Cowen, without passing upon the other questions, concurred in giving judgment for the defendant on the express ground, 'that the relator, if he was clerk, had another specific legal remedy for obtaining the books and papers.'"

The applicant not having demonstrated that he is clearly entitled to the custody of the records, and nothing appearing to authorize the issuance of a writ of *mandamus* in this case, the petition must be denied.

*Denied.*

Chief Justice Quinones and Justices Hernandez, Figueras and MacLeary concurred.